TRUSTEES OF IOWA COLLEGE, Appellant, v. J. F. BAILLIE, County Treasurer, et al., Appellees.

No. 46497.

JANUARY 9, 1945.

SUPPLEMENTAL OPINION AND REHEARING DENIED APRIL 6, 1945.

Brammer, Brody, Charlton & Parker, Carr, Cox, Evans & Riley, and Joseph Rosenfield, all of Des Moines, for appellant.

Herrick, Sloan & Langdon, Francis Kuble, and Bruce J. Flick, all of Des Moines, for appellees.

OLIVER, J.—This action is based upon subsection 11 of section 6944, Code of Iowa, 1939, which exempts from taxation:

"Real estate owned by any educational institution of this state as a part of its endowment fund, to the extent of one hundred sixty acres in any civil township."

The real estate here involved is a quarter block in Des Moines upon which are two buildings, one occupied by the J. C. Penney department store and the other by the F. & W. Grand ten-cent store. The buildings were owned by Benjamin A. Younker, Rachel Younker, and Lytton M. Younker. They owned all the ground except a strip forty-four feet wide, which they held under a long-time lease at an annual rental of $3,600 plus taxes, to be readjusted in 1955. June 30, 1942, the Younkers deeded the property to appellant, the Trustees of Iowa College (the corporate name of Grinnell College), an Iowa corporation, not for profit. The conveyance was subject to a mortgage debt of $175,000 to an insurance company.

The terms of the transaction were set out in a written offer made by the Younkers and accepted by appellant. The offer recites that the Younkers:

"* * * in order to increase the endowment of Grinnell College, propose to transfer to you, subject to the terms and conditions hereof, certain real estate and securities as hereinafter described at a price which is approximately our cost, to-wit, Three Hundred Thirty Thousand Dollars ($330,000.00). You are to hold, manage, control and dispose of the said real estate and securities and the income arising therefrom as more particularly hereinafter set forth."

The offer states the securities have a market value of $45,000 and that the real estate is encumbered with a mortgage for $175,000:

"The purchase price of $330,000 is to be paid and satisfied by you by making the payments provided for in Paragraphs 1, 2 and 3 following and in no other manner whatsoever * * *

"In consideration of the foregoing, you will agree:"

(1)  To pay any additional 1942 income taxes of the Younkers.  Apparently there were none.

(2)  To pay each of the three Younkers $1,000 per month for life: "provided, that if the net income * * * of this Endowment shall from and after April 1, 1955, be insufficient in amount to fully satisfy the amounts payable by you in this paragraph, then the entire net income shall each month be applied ratably in satisfaction of your obligations set forth herein."

(3)  To pay to certain other persons, apparently members of the Younker family, each month during their respective lives, various amounts aggregating $4,500 per year:

"* * * to the extent that net income * * * from said Endowment shall be available * * *.

"In case the net income shall be insufficient in amount in any year to fully satisfy the amounts payable by you as provided in this paragraph, then the net income shall be applied ratably for the benefit of each of the persons entitled thereto * * *."

The offer defines net income as gross income less rent for the forty-four-foot strip, interest, and required annual payments of $7,000 on the principal of the $175,000 mortgage, taxes and special assessments, and operating expenses excluding management or supervision.  (In addition to the foregoing monthly payments, all the income from the $45,000 in securities is to be paid to the Younkers during their respective lives.)

Subject to the foregoing, the net income is to be used in the following order:

(4)  To pay $750 annually to the trustees of the Des Moines Museum of Fine Arts (after its completion) for art prizes. The museum has not yet been completed.

(5)  To establish an annuity reserve fund, in the discretion of appellant, to make "good any deficiency of net income to be paid on the" $36,000 annuities to the three Younkers, until 1955.

(6)  To award scholarships of $500 per year to students or prospective students of Grinnell, varying from eight in 1942–43, to thirty-two in 1945–46 and each year thereafter.

(7)   $75,000 to build and equip a college hospital.

(8)   $125,000 for a college dormitory, the income from which shall be used to create a $250,000 general reserve fund, which may be augmented by surplus income from this endowment.

(9)   Additional scholarships.

(10)   Health welfare, etc., instruction, and additional scholarships.

This endowment is called "The Marcus and Annie Berkson Younker Endowment." The offer states appellant will preserve the corpus of the property to the best of its ability. Accordingly, the required installments of principal and interest on the mortgage shall first be paid. The Younkers shall retain a vendor's lien on the property and income as security for the payments provided in paragraphs 1, 2, and 3, and all the property and income and all reinvestments thereof "shall constitute trust funds for the fulfillment of the purposes of said Endowment as embodied herein." Appellant shall place the property in the Grinnell Endowment Fund, segregate this endowment from all other funds and perpetually so maintain it and the income therefrom, and shall keep separate records and render annual accounts to the Younkers. "Your personal [corporate] responsibility is not pledged for the payment of any items other than" the annuities of $36,000 up to 1955. "However, you are to administer said Endowment and make distributions from the [net] income thereof so far as the same may be available according to the terms and conditions hereof."

■   I.   The general rule that exemption statutes must be strictly construed has been applied in cases of this kind. If there is any doubt upon the question it must be resolved against the exemption and in favor of taxation. A claim for exemption cannot be sustained unless it is clearly shown to be within the letter and spirit of the law. Board of Directors v. Board of Supervisors, 228 Iowa 544, 293 N. W. 38; Readlyn Hospital v. Hoth, 223 Iowa 341, 272 N. W. 90.

■   II.   Was the real estate "owned" by Grinnell College as a part of its endowment fund, within the meaning of the exemption statute? The word "owned," as used in said statute, means equitable or beneficial ownership rather than legal title.

Ellsworth College v. Emmet County, 156 Iowa 52, 62, 135 N. W. 594, 598, 42 L. R. A., N. S., 530. In that case, which involved property held in trust, the court quoted with approval the following statement:

"'If the income from the property or from its proceeds were to go to another during the five years, then it would be very clear that the property or fund should be taxed during that period. When one is the equitable owner of property and is entitled to the income from it, he has the enjoyment of every benefit that could come to any one who might own the property.'" [Norton's Exrs. v. City of Louisville, 118 Ky. 836, 840, 82 S. W. 621, 622, 26 Ky. L. Rep. 846.]

A trust has been defined as a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it. Restatement of the Law, Trusts, Vol. I, 6. It has also been defined as a holding of property, subject to a duty of employing it or applying its proceeds according to directions given by the person from whom it was derived. 65 C. J. 212, section 1. A trust may be with or without consideration. Haulman v. Haulman, 164 Iowa 471, 145 N. W. 930.

Restatement of the Law, Trusts, Vol. I, 35, states:

"Ordinarily where property is transferred to another 'subject to the payment of' a certain sum to a third person, or 'paying' such a sum, an equitable charge and not a trust is created, since the transferor does not thereby manifest an intention to impose a duty upon the transferee to deal with the property for the benefit of the third person. On the other hand, where property is transferred to another with a direction to pay to a third person a certain sum out of the property or its proceeds, or 'subject to the payment from the property or its proceeds,' or 'paying from the property or its proceeds' such sums, a trust and not an equitable charge is created, since the transferor thereby manifests an intention to impose a duty upon the transferee to deal with the property in part at least for the benefit of the third person."

We are satisfied an express trust was created in this case and that the Younkers and other beneficiaries of the trust have beneficial interests in the real estate.

The agreement requires. Grinnell College to hold, manage, and dispose of the real estate as therein provided; to keep the property and income in the endowment fund segregated from all other funds; to render to the Younkers annual accounts of receipts and disbursements; and to administer the endowment and make distributions from the net income according to the terms of the agreement. The agreement defines net income and indicates that payments to the Younkers and their relatives are to be made from such net income. With the exception of the $12,000 life annuity to each of the three Younkers until 1955, all payments to the Younkers and members of their family are not fixed or certain but are expressly limited to net income. Strictly speaking, payments so limited are earnings and not annuities.

From the net income Grinnell is empowered to establish an annuity reserve fund. When the Des Moines Museum of Fine Arts is completed Grinnell will be required to pay it $750 per year from the net income, if sufficient. From the net income Grinnell is empowered to establish a fund from which $750 per year shall be realized for the payments to the Des Moines Museum of Fine Arts and it may transfer said fund to the general funds of Grinnell or to said museum. Investments of any of the funds need not be confined to those permitted to trustees by law, but Grinnell is empowered to invest the same in high-grade securities.

It may be noted that the offer states that the consideration for the transfer of the real estate and securities is $330,000, "approximately our cost." Apparently the language was employed to record such cost for income-tax purposes. We do not mean to imply this was not entirely proper. But the amount actually received from the transaction may be substantially more or less than that figure, depending upon how long the respective beneficiaries live and the net earnings of the property. Nor is the provision that the purchase price of $330,000 is to be paid and satisfied by making such payments

inconsistent with other parts of the instrument. Here again the language appears to have been used to make a record for income-tax purposes. Where a trustee is required to make payments to beneficiaries it is not very material by what name such payments are designated.

We have hereinbefore quoted a statement from Restatement of the Law of Trusts, which differentiates an equitable charge from a trust, and have noted that the corporate responsibility of Grinnell is pledged for the payments of the $36,000 annuities to the Younkers until 1955. Generally speaking, where real estate is transferred subject to the payment of a certain sum, an equitable charge or lien is created and if the payment is to be made to the seller he may reserve a vendor's lien therefor. However, in the case at bar this item is a part of the trust, the payments are to be made from the trust funds (net rents) to the extent these may be sufficient, and the trustee is empowered to establish an annuity reserve fund to make good any deficiency.

Appellant contends the provisions hereinbefore set out reserving a vendor's lien establish a debtor-and-creditor relationship between Grinnell and the Younkers and their relatives. Attached to that provision is the statement that all the property and income shall constitute trust funds. We need not consider the validity of the vendor's-lien provision. In a doubtful case it would be entitled to consideration as tending to indicate what appellant claims for it. But here the creation of a trust is established beyond serious doubt. For example, appellant is required to hold and manage the real estate transferred to it, and if the net income therefrom is sufficient, to pay the Younkers' relatives $4,500 per year. If the net income is insufficient it "shall be applied ratably for the benefit of" them. This is a trust under any definition, and the so-called vendor's lien cannot destroy such trust or change the trust relationship between the trustee and the beneficiaries.

A nonprofit educational institution, such as Grinnell, is what is known in law as a charitable corporation. In re Estate of Cooper, 229 Iowa 921, 295 N. W. 448.

Appellant places some reliance upon a rule of law that a transfer direct to a charitable corporation of property to be

used for any of the purposes for which the corporation is organized, generally speaking, makes the corporation the owner of such property and does not create a trust. Restatement of the Law, Trusts, Vol. II, 1093. Hastings v. Rathbone, 194 Iowa 177, 188, 188 N. W. 960, 23 A. L. R. 392; 10 Am. Jur. 610, section 37; Hobbs v. Board of Education, 126 Neb. 416, 253 N. W. 627; St. Joseph's Hospital v. Bennett, 281 N. Y. 115, 22 N. E. 2d 305, 130 A. L. R. 1092.

That rule is not here applicable because the payments to be made the Younkers and their relatives and the Des Moines Institute of Fine Arts are not payments for any of the purposes for which Grinnell College was organized. Nor, under the trust agreement, are such payments merely charges upon the property. They are payments which said agreement requires that the trustees make to beneficiaries of the trust.

The foregoing considerations lead us to conclude the real estate was not "owned" by Grinnell College as a part of its endowment fund, within the meaning of the exemption statute, and hence was not exempt from general taxes, under said statute.

The trial court did not determine whether or not the transaction constituted a technical trust, stating:

"It seems to this court that for the purpose of arriving at a decision of the question presented it is of no consequence what name is given to the transaction but the court should look to the substance thereof and determine therefrom the question of exemption."

Our holding that a trust was created renders unnecessary a consideration of the case from the standpoint of whether or not the tax exemption would follow if the transaction left the Younkers with only an equitable charge against the realty as security for the payments due them and we express no opinion upon that proposition.

III. Appellant asserts that if we hold Grinnell owns only a part of the equitable estate in the realty, such part is exempt from taxation under the exemption statute. It takes the position that the value of the beneficial interest owned by

Grinnell should be deducted from the entire value in fixing the value to be taxed. It would have such value fixed annually upon the proportionate interest in the fund arising from the earnings used for the benefit of the Younkers and their relatives. Upon the foregoing propositions appellant cites: Ellsworth College v. Emmet County, supra, 156 Iowa 52, 135 N. W. 594, 42 L. R. A., N. S., 530; Masonic Temple Craft v. Board of Equalization, 129 Neb. 293, 261 N. W. 569; Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060; Board of Home Missions and Church Extension v. Philadelphia, 266 Pa. 405, 109 A. 664; Hanagan v. Rocky Ford Assn., 101 Colo. 545, 75 P. 2d 780.

The record indicates the real estate produces substantial income. The rents are based upon annual sales of the tenants, with a guaranteed minimum of $63,000. Net earnings above taxes, ground rent, interest and operating expenses, not including principal payments on the mortgage, were approximately as follows: for 1938, $47,000; for 1939, $48,000; for 1940, $47,000; for 1941, $60,000, and for 1942, $82,000. The taxes for 1942 (payable in 1943) were about $23,000. This figure does not include taxes of about $4,500 on the forty-four-foot rented strip which is not claimed to be exempt.

However, the record does not show what part of the net earnings for any year was used for the benefit of the Younkers and their relatives. The only evidence upon this point is that in May 1943 Grinnell had $8,000 in bonds in the reserve funds and $17,900 cash on hand, part of which came from another endowment. Hence we need not consider the legal propositions upon which appellant bases its claim to partial exemption and we express no opinion thereon.

IV. Appellant makes some contention that the real estate is wholly exempt because the primary purpose and use of the income is for Grinnell. Certain decisions from other jurisdictions, under statutes differing from ours, are cited.

In this case the net income, for the time being, is first devoted to making the annual payments of $40,500 to the Younkers and their relatives and perhaps in part to the annuity reserve fund. This requires a large part of the net

income. Under the circumstances it should be regarded as the primary purpose for which such income is used.

There is also evidence that the assessed value of the real estate, less the forty-four-foot strip, was approximately $620,-000. Based upon such valuation, the equity above the $175,000 mortgage would be $445,000. An actuary testified that the minimum sum required to purchase from an insurance company the annuities provided by the agreement would be about $459,000.

Appellant points out that the computation of the actuary is based upon annuities absolutely payable by an insurance company, whereas in this case, either at some time or from the beginning, the monthly amount payable to each annuitant is contingent upon the net income being sufficient therefor. It may be conceded that the figure given by the actuary does not precisely measure the present worth of the beneficial interest of the Younkers and their relatives in the property. However, when considered in connection with other matters shown of record, it tends to indicate that such interest is the major one and affords support to our holding that the primary purpose and use of the income is not for Grinnell.

It is our conclusion that appellant failed to show the real estate was exempt from taxation in whole or in part.—Affirmed.

HALE, C. J., and SMITH, MULRONEY, GARFIELD, and BLISS, JJ., concur.

WENNERSTRUM, MILLER, and MANTZ, JJ., dissent.

WENNERSTRUM, J. (dissenting)—I am unable to agree with the holding announced in the majority opinion and therefore I respectfully dissent.

I. In Division II of the majority opinion the question is asked, "Was the real estate 'owned' by Grinnell College * * * within the meaning of the exemption statute?" It continues with the statement: "The word 'owned,' as used in said statute, means equitable or beneficial ownership rather than legal title." It cites the case of Ellsworth College v. Emmet County, 156 Iowa 52, 135 N. W. 594, 42 L. R. A., N. S., 530, and therein quotes from the case of Montgomery v. Wyman.

130 Ill. 17, 22 N. E. 845. However, the quoted portion as incorporated in the last-cited case is taken from Norton's Exrs. v. City of Louisville, 118 Ky. 836, 82 S. W. 621, 26 Ky. L. Rep. 846.

The quoted portion from the Norton case holds that if the income from the property was to go to another during a five-year period, then the property should be taxed during that period. However, this quotation continues with the statement that when one is the equitable owner of property and is entitled to the income from it he has the enjoyment of every benefit that could come to anyone who might own the property.

Now, in the present case, who is the equitable owner? In the case of Ellsworth College v. Emmet County, supra, 156 Iowa 52, 60, 62, 135 N. W. 594, 597, 42 L. R. A., N. S., 530, we find this statement:

"In order to ascertain who the equitable owners are, the court must inquire for whose benefit was the trust created. That being ascertained, the person or persons who are to be the ultimate beneficiaries are regarded in equity as the equitable owners. Pearson v. Lane, 17 Ves. 101."

There cannot be any question but that the Trustees of Iowa College (Grinnell) are the ultimate beneficiaries and are the equitable owners. The quotation from the Norton case gives support to this conclusion, wherein it is stated: "When one is the equitable owner of property and is entitled to the income from it, he has the enjoyment of every benefit that could come to any one who might own the property." The statement last made was quoted in the Ellsworth College case, and the following was also set out:

"To hold that the property should be taxed because it is controlled by other than the trustees of the orphans' home for a specified period is giving effect to the shadow, and not the substance, of things."

In connection with the proposition as to whether or not the property involved in the instant case is "owned by" the Trustees of Iowa College (Grinnell) it is advisable that consideration be given to previous holdings of this court relative

to somewhat kindred questions. I do not find that this court has defined "owned by," but it has, in a tax-redemption case, defined the word "owner." In the case of Adams v. Beale, 19 Iowa 61, 68, this court made the following statement:

"But aside from the statutory definition, the rule of construction, which obtains in redemption cases, gives to the word 'owner,' and phrase 'party in interest,' quite as broad and comprehensive a meaning as the statute quoted supra. In construing the redemption laws, the word 'owner' is held to be a generic term, which embraces the different species of interest which may be carved out of a fee simple estate. Blackwell on Tax Titles, 1st ed., 495 (2d ed., 423); Byington v. Rider, 9 Iowa, 566. Where land has been mortgaged to secure a debt, and judgment creditors have liens upon it, and the land is in possession of a stranger to the title, whose possession is ripening into a right, each is an 'owner' according to the extent of his interest or claim, and each has a right to protect his interest by a redemption from a tax sale. Blackwell on Tax Titles, 496 (2d ed., 423).

"Any right which in law or equity amounts to an ownership in the land; any right of entry upon it, to its possession or engagement, or any part of it which may be deemed an estate, makes the person an owner as far as it is necessary to give him the right to redeem. Dubois v. Hepburn, 10 Peters, 1; see also Byington v. Bookwalter, 7 Iowa, 512; Masterson v. Bearsly, 3 Ohio, 301; Burton v. Hintrager. 18 Iowa, 348."

There can be no question but that the Trustees of Iowa College (Grinnell) could redeem in case of a tax sale. They have the legal title; they are, as apparently admitted by the majority opinion, the equitable owners. If they would be considered owners for the purpose of redeeming in case of a tax sale, the college or its trustees should be held to be owners for purposes of claiming exemption.

In connection with a suit for damages for a change of street grade, this court, in the case of Chiesa & Co. v. City of Des Moines, 158 Iowa 343, 346, 138 N. W. 922, 924, 48 L. R. A., N. S., 899, made the following statement:

"The word 'owner' is of frequent use in our statutes pertaining to property and property rights, and, like most words, its significance is subject to some degree of variance, dependent upon its context and the subject-matter to which it is applied. In common speech it is doubtless most often used to designate the person in whom the legal or equitable title rests, as distinguished from a mere occupant or tenant. As used in law, it is very often given a wider and more comprehensive meaning. In its strictest sense, the owner of land is he who had the sole right of dominion, use, enjoyment, and disposition. It may happen, however, and does happen every day, that with respect to a given item of real property the various elements or estates which together make up what we may call absolute ownership are vested in different persons. One may hold the legal title, another the equitable title, another a tenancy for life, and another a term of years. Each owns a property right in the land, and each is, for many purposes, the actual owner thereof. The statutes of the state expressly note the existence of different estates in the same land, and inferentially recognize the several holders of such distinct estates as owners. It is provided that the words 'land,' 'real estate,' and 'real property' shall be held to include lands, tenements, hereditaments, and *all rights thereto and interests therein,* equitable as well as legal. Code, section 48 (8). And the word 'property' includes 'real property.' Code, section 48 (10). A tenant for life or for a term of years of a city lot or other land certainly has a right and interest therein. He is therefore an owner of the property to the extent of that interest; and it would seem to follow of necessity that the statute which gives the right to recover for damages to the property includes damages to each and every estate or interest therein, legal or equitable. In pursuance of that conception or definition of property, this court has held the word 'owner' to include the wife of a husband who holds title to a family homestead. Adams v. Beale, 19 Iowa, 68. The court there says that any right which, in law or equity, amounts to an ownership in land, any right of entry upon it, to its possession or enjoyment, or any part of it which may be deemed an estate, makes the person an owner, as far as it is necessary to entitle

him to redeem the land from tax sale. See, also, Cummings v. Wilson, 59 Iowa, 14; Swan v. Harvey, 117 Iowa, 58. A mortgagee is an owner, within the statute providing for the condemnation of land for public purposes. Severin v. Cole, 38 Iowa, 463. The word 'owner,' as used in the mechanic's lien statute, has been held to include 'any person who has an estate or interest in the land.' Monroe v. West, 12 Iowa, 119. As supporting this view, see Gitchell v. Kreidler, 84 Mo. 476; Benjamin v. Wilson, 34 Minn. 517 (26 N. W. 725); Gerrard v. Railroad Co., 14 Neb. 270 (15 N. W. 231); Loso v. Sutherland, 38 Mich. 171; Mixon v. Stanley, 100 Ga. 377 (28 S. E. 440); Higgins v. San Diego, 131 Cal. 308 (63 Pac. 470); Telephone Co. v. Marsh, 96 App. Div. 122 (89 N. Y. Supp. 79); Parker v. Railroad Co., 79 Minn. 373 (82 N. W. 673); Smith Co. v. Labore, 37 Kan. 480 (15 Pac. 577). In Schott v. Harvey, 105 Pa. 228 (51 Am. Rep. 201), this language is used: 'A tenant for years, a tenant for life, and a remainderman in fee is each an owner.' Indeed, it seems to be thoroughly established that the term 'owner' will be held to include the owners of any distinct interest or estate in the land less than a fee, whenever the connection in which it is used, or the apparent purpose of the statute, is such as to call for the broader construction.''

A tax-exemption case that I feel is applicable to the question presented in this appeal is that of San Antonio Independent School District v. Water Works Board of Trustees, Tex. Civ. App., 120 S. W. 2d 861, 865. In this last-cited case it is disclosed that the city of San Antonio had purchased the waterworks previously privately owned and operated. It was contended that under the arrangement whereby this utility was to be operated by a board of trustees the property was not owned and held by the city of San Antonio and therefore the property was not exempt from taxation. The Texas court held, in part, as follows:

"The decision of this case turns upon the sole question of whether or not the Water Works System, which supplies the City of San Antonio, is 'owned and held' by the City of San Antonio, so as to come within the provisions of the State Consti-

tution which exempts such property from taxation. As we construe appellant's brief, its theory is: (1) That the City of San Antonio does not own the Water Works System, but has merely a contract to purchase it, and (2) that, even if it be conceded that it owns the title to said property, it does not hold the property, but, instead, said property is held by the Water Works Board of Trustees, which is no part of the government of the City of San Antonio.

"We think that appellant's contention, that the City does not own the Water Works System, is clearly untenable. The deed from Wagner to the City conveyed the property to the City by general warranty deed. The City has never parted with the ownership of the property vested in it by that deed. By the trust agreement, it merely further secured the payment of the purchase price by creating a deed of trust lien in addition to the vendor's lien retained in the deed. Its title to the property will, of course, not be absolute until the indebtedness is satisfied and the liens discharged; but it is, nevertheless, in the meantime, the owner of the property, subject only to the indebtedness. Its ownership of the property is no different from that of any private owner who holds property against which there is an outstanding lien."

II. Division II of the majority opinion further seeks to justify the conclusion it announces upon the theory that the arrangement made by the Trustees of Iowa College (Grinnell) with the Younkers constituted a trust relationship and that this claimed trust relationship resulted in the three Younker beneficiaries, and the other Younker relatives, possessing a beneficial interest in the real estate. An analysis of the portion of the Restatement of the Law, Trusts, Vol. I, 35, quoted in the majority opinion, discloses that the quoted statement, based on the record in this case, does not support the conclusion announced in the majority opinion. For the purpose of giving close consideration to the statement incorporated in the majority opinion, it is again set out, as follows:

"Ordinarily where property is transferred to another 'subject to the payment of' a certain sum to a third person, or 'paying' such a sum, an equitable charge and not a trust is

created, since the transferor does not thereby manifest an intention to impose a duty upon the transferee to deal with the property for the benefit of the third person. On the other hand, where property is transferred to another with a direction to pay to a third person a certain sum out of the property or its proceeds, or 'subject to the payment from the property or its proceeds,' or 'paying from the property or its proceeds' such sums, a trust and not an equitable charge is created, since the transferor thereby manifests an intention to impose a duty upon the transferee to deal with the property in part at least for the benefit of the third person.''

The first sentence of this quotation does not sustain the claim made for it in the majority opinion. On the contrary, it gives support to the claim of this dissenter in that under the record in this case the property was transferred and is now ''owned by'' the Trustees of Iowa College (Grinnell) ''subject to the payment of'' certain definite sums to the three members of the Younker family who heretofore owned the property involved in this appeal, and that thereby ''an equitable charge and not a trust'' was created. The contingent payments to certain Younker relatives, even under the last sentence of the quoted authority, do not create other than an equitable charge in that the offer of conveyance to Grinnell College carried the provision that the payments to certain Younker relatives shall be made ''to the extent that net income * * * from said endowment shall be available.'' There is no direction in the offer that requires the Trustees of Iowa College (Grinnell) to pay to a third person ''a *certain sum* out of the property or its proceeds.'' The offer to transfer the property was not ''subject to the payment from the property or its proceeds'' or ''paying from the property or its proceeds *such sums*,'' which payments, under the quoted authority, would create a trust rather than an. equitable charge. The payment to the Younker relatives was to be made only ''to the extent that net income * * * from said Endowment shall be available.'' Consequently, it is apparent that the first sentence of the quotation in the majority opinion supports my contention that the arrangement entered into resulted in an equitable charge in favor of the three Younker grantors rather than a

trust. It is further apparent that there was not contemplated a payment to the Younker relatives of any definite sum as contemplated in the second sentence. Consequently, I maintain that the quoted authority supports my contention that a trust was not created. Instead, this authority, under the facts in the present case, sustains my claim that an equitable charge was created.

III. A further quotation from the Restatement of the Law, Trusts, Vol. I, 42, appears applicable to the facts as presented by the record in this case. It should be kept in mind that, as noted in the majority opinion, the arrangement between the three members of the Younker family and the Trustees of Iowa College (Grinnell) developed by reason of an offer of conveyance to the trustees. In this offer it is definitely stated that the purchase price of the property is $330,000 and that this purchase price was to be satisfied by making the payments as thereafter set forth. This offer of conveyance was accepted by the Trustees of Iowa College (Grinnell) and the property involved in the instant litigation was conveyed to the trustees. The last-referred-to statement from the Restatement of the Law of Trusts is as follows:

"Manifestation of intention. If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created."

Under the authority last quoted it is very apparent that it was the intention of all the parties "that the person [the Trustees of Iowa College] receiving the money [property, in the instant case] shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person," and that by this arrangement a debt was created.

IV. A debt is not a trust. Restatement of the Law, Trusts,

Vol. I, 40. It should be kept in mind that the offer to convey the property to the Trustees of Iowa College (Grinnell) and the acceptance thereof constituted a contract between the parties. A contract to convey a property is not a trust whether or not the contract is specifically enforceable. Restatement of the Law, Trusts, Vol. I, 49.

In connection with the contract relationship between the parties, a further quotation from the Restatement of the Law, Trusts, Vol. I, 50, is applicable. It is there stated:

"If the contract is specifically enforceable, the purchaser acquires an equitable interest in the property, but the relation between the vendor and purchaser is not a trust. The relation between the vendor and purchaser, unlike that between trustee and beneficiary, is not a fiduciary one; it is more nearly analogous to a mortgage."

It should also be kept in mind that a contract for the benefit of a third party is not a trust. The contract that was entered into, as far as the three Younker grantors and the other Younker relatives are concerned, was a contract for their benefit and, as previously stated, cannot be held to be a trust. Restatement of the Law, Trusts, Vol. I, 51. This last statement is substantiated by the comment in the Restatement of the Law, Trusts, Vol. I, 52, where it is stated:

"Manifestation of intention. If property is transferred by one person to another who agrees in consideration thereof to assume a personal liability to a third person, a contract for the benefit of the third person and not a trust is created. This is true whether the third person is a donee-beneficiary or a creditor-beneficiary. (See Restatement of Contracts, §133.)"

V. The statements made in the majority opinion that, "With the exception of the $12,000 life annuity to each of the three Younkers until 1955, all payments to the Younkers and members of their family are not fixed or certain but are expressly limited to their net income," and that, "Strictly speaking, payments so limited are earnings and not annuities" are not substantiated by any authorities.

The Circuit Court of Appeals held contrary to this unsupported statement, in the majority opinion in the case of Continental Illinois Bank & Trust Co. v. Blair, 7th Cir., Ill., 45 F. 2d 345. In this last-cited case it was held that a contract providing for the turning over to certain institutions of certain stocks and bonds and the payment to the assignor of these securities of the interest and income derived therefrom during his lifetime and thereafter to his wife constituted endowment and annuity contracts. It is true that this last-cited case involved the question of the exemption from federal income tax of the income derived from the securities conveyed. However, the facts in the last-cited case are very similar to the facts in the instant case and support my contention that an endowment and annuity contract had been entered into and that a trust was not created.

VI. In the concluding portion of Division II of the majority opinion it is held that, inasmuch as payments are to be made to the three Younkers and certain of their relatives and to the Des Moines Institute of Fine Arts, the general rule of law that a transfer direct to a charitable corporation of property to be used for any of the purposes for which the corporation is organized makes the corporation the owner of such property and does not create a trust is not applicable, since these payments are not for any of the purposes for which Iowa College (Grinnell) was organized. The majority opinion, by judicial designation, refers to the contract arrangement between the Younkers and the Trustees of Iowa College (Grinnell) as a trust agreement and thereby concludes that the real estate was not "owned" by the Trustees of Iowa College (Grinnell) "as a part of its endowment fund, within the meaning of the exemption statute." This was not the holding in the case of State v. Watkins [In re Delinquent Personal Taxes for the Year 1907], 108 Minn. 114, 115, 118, 121 N. W. 390, 391, in which the facts are somewhat similar to the instant case. In this last-cited case there was set up by will a charitable trust "subject to a charge upon the property to secure the payment of a conditional life income or annuity of ten thousand dollars to her husband, Dr. Appleby, to be paid to him semi-annually."

The will, in this connection, also gave the trustees securi-

ties sufficient to produce an annual income of at least $10,000. They accordingly set aside securities for such purposes of the value of $346,515, producing an annual income of $18,615.

The opinion is concluded with the following statement:

"It is suggested, in effect, that if property may be given by will or gift to a charitable corporation, charged with the payment of a life annuity to the donor or other party, exempt from taxation, the annuity might be so large as to deprive the corporation of any beneficial use of the property for an indefinite time and secure to the annuitant the beneficial use of the property for life without taxation. If such would be the result, the suggestion would be entitled to serious consideration. The annuity, however, in this and in all similar cases, would not be a charity, and the statute expressly provides for the taxation of the income of every annuity, unless the capital of the annuity be taxed within this state. R. L. 1905, §797, subd. 7. It is clear that the part of the residue of the estate which was set apart for the Dr. Appleby trust was exempt from taxation on May 1, 1907, for the same reason that the rest of the estate was so exempt. Any attempt to tax either was an attempt to tax the propery of a public charity. Williston Seminary v. County, 147 Mass. 427, 18 N. E. 210; Norton's Exrs. v. City [of Louisville], 118 Ky. 836, 82 S. W. 621.

"It follows that the judgment of the district court, adjudging that the property upon which the taxes here in question were assessed was exempt from taxation, was correct."

VII. Division IV of the majority opinion holds that inasmuch as at the present time certain annual payments of $40,500 are paid to the Younkers and their relatives, and perhaps, additional funds are paid to the annuitant reserve fund, under the circumstances these payments should be regarded as the primary purpose for which the income is used. The payment of these funds under the contract arrangement does not necessarily result in the property being held in trust for the three Younker grantors and certain of their relatives. It is quite possible that the payments to the three Younkers and their relatives might amount to a sum equal to the value of the

building. The contract that was entered into between the parties constituted a purchase of the property by the Trustees of Iowa College (Grinnell). The college is obligated to pay $36,000 for approximately thirteen years. It has title to the property and is paying for it on a yearly basis. It may pay more for the building than it is now worth but that should not make any difference for taxation purposes. If the property had been purchased by the Trustees of Iowa College (Grinnell) and deeded to them and a mortgage given back for the full face value no one could say but that the property was owned by the Trustees of Iowa College (Grinnell). That is virtually the situation in the instant case. The title to the property in question is in the Trustees of Iowa College (Grinnell) and is "owned by" them, subject to the payment of certain sums— just like the amortization payments on a mortgage. I do not think that this court has any right to put the construction upon the statute which it has in the majority opinion. If there is any loss to the local taxing bodies by reason of this particular transaction the correction, if any, should be made by the legislature and not by this court by judicial interpretation and construction.

In the case of Home Owners Loan Corp. v. District Court, 223 Iowa 269, 271, 272 N. W. 416, 417, this court commented on the rules applicable to statutory construction and quoted, in part, from some of our previous cases. This court there stated:

"This court has laid down some very definite rules, relative to statutory construction, that the language used in the statute must be construed according to its plain and ordinary meaning.

"In the very recent case of Smith v. Sioux City Stock Yards Co., 219 Iowa 1142, at page 1149, 260 N. W. 531, 534, this court said:

"'Where the language of a statute is plain and unambiguous, there is no occasion for construction, even though other meanings could be found; and the court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute

must be given effect according to its plain and obvious meaning, and cannot be extended beyond it because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning, or the court would be assuming legislative authority.'

"In the case of Hahn v. Clayton County, 218 Iowa 543, at page 551, 255 N. W. 695, 699, this court said:

"'One of the first and most controlling maxims of construction, however, is that, where the language of a statute is plain and unambiguous, there is no room for construction. As said in 12 C. J., 1302:

"'"Construction can only be employed for the discovery of the true intent and meaning of an instrument, and when the language is plain there can be no construction, because there is nothing to construe; hence, the term can have no application to a statute in which there is nothing doubtful or ambiguous in its terms."'"

VIII. It should be kept in mind that the annuities payable to Younkers are taxable as moneys and credits. It will thus be seen that under the arrangement as entered into between Younkers and the Trustees of Iowa College (Grinnell) Younkers are not entirely freed from the payment of taxes. Sections 6953(5), 6985, 1939 Code of Iowa.

To summarize my contentions as set forth in this dissent I maintain (1) that the property involved in this litigation is "owned by" the Trustees of Iowa College (Grinnell) "as a part of its endowment fund" (2) that the Trustees of Iowa College (Grinnell) are the equitable owners of the property (3) that by reason of this equitable ownership the property is exempt from taxation by reason of the statutory exemption (4) that there is no trust relationship present (5) that the transaction constitutes a contract of purchase and that a debtor-and-creditor relationship was established (6) that a debt is not a trust (7) that the purchase of the property and the transfer of it constituted "a contract for the benefit of a third person" and that a trust was not created (8) that the contract was an annuity contract and the Trustees of Iowa College (Grinnell) are obligated to carry out the provisions of the

contract as an equitable owner (9) that the majority opinion has, by judicial interpretation, placed an unwarranted construction on the statute that heretofore was "plain and unambiguous" (10) that the annuity contract is taxable as moneys and credits and taxes can properly be levied thereon.

With due respect to the majority opinion, it appears to me that it is not sound, and that the conclusions and holdings announced have been reached by circuitous reasoning which has not particularly clarified the problem presented on this appeal. By reason of my study of the authorities which I have heretofore quoted and set forth, and because of the numerous contentions I have noted in the summarization of my conclusions, I would reverse.

MILLER and MANTZ, JJ., join in this dissent.

## SUPPLEMENTAL OPINION.

PER CURIAM.—In affirming the judgment, our reasoning was not, in all respects, identical with that of the distinguished trial court and we deemed it unnecessary to consider some propositions upon which the trial court made findings. Appellant suggests the affirmance goes not only to the decree and judgment of the trial court but also to its findings of fact and rulings of law. An affirmance does not necessarily affirm the reasoning or findings by which the trial court came to its conclusion, and our failure to mention the same is not to be construed as leaving such findings and rulings standing as an adjudication. Chicago & Northwestern Ry. Co. v. Board of Supervisors, 182 Iowa 60, 83, 162 N. W. 868, 165 N. W. 390; Northwestern Mut. L. Ins. Co. v. Blohm, 212 Iowa 89, 234 N. W. 268, and decisions cited therein.

With this addition to the opinion as filed the petition for rehearing is overruled.