**AIRPORT BUILDING CORPORATION; Tibben Flight Lines, Inc.; and the City of Cedar Rapids, Iowa, Plaintiffs-Appellees,**

v.

**LINN COUNTY ASSESSOR and Linn County, Iowa, Defendants-Appellants.**

No. 85–1786.

Court of Appeals of Iowa.

March 31, 1987.

Gary P. Jarvis, Asst. Linn Co. Atty., for defendants-appellants.

Henry E. Nathanson and Maurice L. Nathanson of Nathanson Law Offices, Cedar Rapids, for plaintiffs-appellees.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

The defendants, the Linn County Assessor and Linn County, Iowa, appeal from the district court's ruling that a building owned by a nonprofit corporation, located on land owned by the City of Cedar Rapids and used for purposes related to the Cedar Rapids Municipal Airport, was exempt from property taxation because the City is the beneficial owner and because it was used for a public purpose. The county and the assessor have appealed, challenging the conclusion that the building is beneficially owned by the City and is therefore exempt from property taxation. We affirm.

The plaintiff Tibben Flight Lines, Inc. is a full service "fixed base operator" at the Cedar Rapids Municipal Airport. A fixed base operator provides such services as fueling of airplanes, flight instruction, charter flying, and maintenance and repair of airplanes. Tibben first located at the Cedar Rapids Airport in a city-owned building in 1977. However, due to future plans for expansion at the airport, it soon became apparent that the building was inadequate for Tibben's needs. Although the City of Cedar Rapids recognized the need for a new facility, the City was unable to issue a bond for a new building because it needed to conserve its bonding power for a pro-posed new airport terminal. In order to provide a new building for Tibben, the director of the airport put Tibben in contact with a private contractor. The contractor subsequently organized the Airport Building Corporation (ABC), a nonprofit corporation. Through this "front," the City could have an industrial revenue bond issued in order to have Tibben's facility built with bond money that would not be directly counted in the city's indebtedness. On September 9, 1981, the Cedar Rapids City Council unanimously adopted a resolution to issue industrial revenue bonds to finance the construction of the new facilities for Tibben.

The City subsequently leased to ABC the ground on which it wanted the facility built for twenty years at an annual rate of $1.00. ABC in turn borrowed $227,000.00 from a private Cedar Rapids bank. ABC built the new facilities and leased it to Tibben Flight Lines, Inc. for twenty years at a monthly rental of $2,659.48, the amount necessary to amortize the construction loan in that period of time. Since ABC did not own the land on which it was building, it could not give the bank a first mortgage lien. In order to secure the bank's loan, ABC quitclaimed its interest in the building to the bank, the quitclaim deed being put in escrow until the construction loan is fully amortized, at which time the quitclaim deed is to be delivered to the city.

Tibben, in addition to the rent payments to ABC, pays a percentage of gross receipts directly to the City under an operating lease with a credit allowed for all amounts paid toward the construction loan. ABC has no bank account and simply endorses Tibben's rent checks to the bank to be applied to the loan.

In 1984, the Linn County Assessor sought to assess property taxes for the building constructed by ABC and occupied by Tibben. ABC, Tibben, and the City of Cedar Rapids challenged the assessor's action by filing the present proceeding, claiming that the building was exempt from taxation because the City of Cedar Rapids was the beneficial owner and because it was devoted to public use and not held for

pecuniary profit. The district court agreed and held that the building was exempt from property taxation. The county and the assessor have appealed from the district court's ruling.

Because the present case was tried in equity in the district court, our scope of review is de novo. Iowa R. App. P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App.P. 14(f)(7).

The plaintiffs ABC, Tibben, and City of Cedar Rapids contend that the building from which Tibben operates its services is exempt from property tax pursuant to Iowa Code section 427.1(2) (1985). Section 427.1(2) provides that the following property shall not be taxed:

> *Municipal and military property.* The property of a county, township, city, school corporation, levee district, drainage district or military company of the state of Iowa, when devoted to public use and not held for pecuniary profit, except property of a municipally owned electric utility held under joint ownership and property of an electric power facility financed under chapter 28F which shall be subject to assessment and taxation under provisions of chapters 428 and 437. The exemption for property owned by a city or county also applies to property which is operated by a city or county as a library, art gallery or museum, conservatory, botanical garden or display, observatory or science museum, or as a location for holding athletic contests, sports or entertainment events, expositions, meetings or conventions, or leased from the city or county for any such purposes.

Iowa law is well established concerning our review of the statutory provisions for property tax exemption. The exemption statute must be strictly construed. *Iowa Lakes Foundation v. Board of Review of Emmet County,* 387 N.W.2d 377, 379 (Iowa Ct. App.1986) (citing *Dow City Senior Citizens Housing, Inc. v. Board of Review,* 230 N.W.2d 497, 499 (Iowa 1975)). "Any doubt upon the question of exemption must be resolved in favor of taxation. Taxation is the rule; exemption is the exception." *Id.* We recognize, however, that each case must stand largely on its own set of facts. *Id.*

Pursuant to section 427.1(2), three requirements must be established before property may be considered exempt from property tax: (1) the property must be owned by the city; (2) the property must be devoted to a public use; and (3) such property must not be held for pecuniary profit. In the present case, the Linn County assessor admitted that the property used by Tibben was devoted to a public use and not held for pecuniary profit. Thus, the sole question before us is whether the Tibben building is property owned by the City of Cedar Rapids.

■ The phrase, "the property of," as used in section 427.1(2) has been equated with "owned by," as used in section 427.-1(11) concerning property of educational institutions. *Merged Area (Education) VII v. Board of Review of the City of Waterloo,* 326 N.W.2d 310, 313 (Iowa 1982). The phrase "owned by" has been interpreted as including not only legal title, but equitable or beneficial ownership as well. *Trustees of Iowa College v. Bailee,* 236 Iowa 235, 238, 17 N.W.2d 143, 146 (1945). Though we have not been heretofore called upon to interpret the phrase "the property of" in conjunction with section 427.1(2), because we must ascribe to statutory language its usual and ordinary meaning, we determine that the phrase "the property of" as used in section 427.-1(2) includes equitable or beneficial ownership as well as legal title. *Good v. Iowa Civil Rights Com'n,* 368 N.W.2d 151, 155 (Iowa 1985); *see also Beier Glass v. Brundige,* 329 N.W.2d 280, 286 (Iowa 1983) (when identical language is used several places in an enactment, it is given the same meaning).

A thorough search of Iowa case law has revealed no Iowa authority dealing with the precise fact pattern of the present case. We must therefore look to similar authority for guidance. In *Ellsworth College v. Emmet County,* 156 Iowa 52, 135 N.W. 594 (1912), the Iowa Supreme Court con-

sidered the question of whether trustees, who had been devised certain lands under a will and who, under the will were to set aside a portion of the proceeds to build a home for the elderly, the remainder to be used as an endowment fund, were equitable owners of the lands in question. In holding that the lands were exempt from taxation except that portion on which the home for the elderly was built, the Iowa Supreme Court opined the following test of equitable ownership:

> By the devise in question the trustees were given the legal title to the land, and while the beneficiaries had no interest in the legal or equitable estate expressly devised to the trustees, yet the equitable interest must necessarily have vested in someone. In order to ascertain who the equitable owners are, the court must inquire for whose benefit was the trust created. That being ascertained, the person or persons who are to be the ultimate beneficiaries are regarded in equity as the equitable owners.

156 Iowa at 60, 135 N.W. at 597.

The principles enunciated in *Ellsworth College* were noted in two subsequent cases cited by both parties in support of their respective positions, *Trustees of Iowa College v. Baillee*, 236 Iowa 235, 17 N.W.2d 143 (1945), and *Cornell College v. Board of Review of Tama County*, 248 Iowa 388, 81 N.W.2d 25 (1957). In *Baillee*, Grinnell College was the grantee of legal or fee simple title to certain real property but was required in the agreement to hold, manage, and dispose of the property as provided therein. 236 Iowa at 236–37, 17 N.W.2d at 145. The college was required to keep the property and the income therefrom in its endowment fund and segregated from all other funds. *Id.* It was further required to make certain payments to the grantors and others. *Id.* With the exception of payments through 1955 on life annuities to the grantors, all required payments were payable to the extent of net income from the property. *Id.*

The Iowa Supreme Court held that the property granted to the college was not exempt from taxation. 236 Iowa at 242, 17

N.W.2d at 147. The court, upon examination of the provisions of the agreement, determined that the payments made to the grantors were not payments for any of the purposes for which the college was organized. *Id.* The payments made were not merely charges upon the property, but were made for the express benefit of the grantees. *Id.* Therefore, the *Bailee* court held that the real estate was not "owned" by the college and hence was not exempt from taxation. *Id.*

In *Cornell College*, the college obtained title through quitclaim deed, to certain real estate from the then owners (grantors), on the premise that the college use such real estate for the purpose of promoting Christian education. 248 Iowa at 389, 81 N.W.2d at 26. The agreement also provided that the college was to take possession of the land subject to an existing lease of a then tenant, who could lease the premises for the life of either grantor. *Id.* at 390, 81 N.W.2d at 26. Income and rents were to belong to the college, but the real estate was not to be disposed of during the lifetime of either grantor. *Id.* The college agreed to issue to the grantors an annuity bond whereby the college was to pay the grantor twice yearly payments of $1,200.00 for the life of either grantor. *Id.*

In holding that the real estate was not exempt from taxation, the Iowa Supreme Court noted that the amount of the fair rental value of the land per acre was the exact same sum to be paid to the grantors each year. 248 Iowa at 391, 81 N.W.2d at 27. The court additionally noted that the college did not take title free of any condition; the college was not free to choose its own tenant nor could it dispose of the property during the lifetime of the grantors. *Id.* The court ultimately held that the intent and purpose of the agreement was to benefit the grantors, and not the college, and that therefore the land was not exempt from taxation. *Id.*

Though the facts of the *Baillee* and *Cornell College* cases do not deal with the same set of facts as in the present case, several important principles may nonetheless be gleaned from the analysis

presented in both cases. First, as we noted earlier, the holder of legal title to certain real estate will not necessarily be considered the equitable owner. Second, the courts will look to the intent and purpose of the parties when they entered into an agreement and will look to who is the actual recipient of the benefits flowing from such an agreement. Third, the courts must look to the amount of control one party exercises over another in using the particular real estate in question.

Other jurisdictions have also considered the question of who is the beneficial owner of real estate regarding the exemption of that property from taxation. The Wisconsin Supreme Court has applied a helpful model of analysis in a series of cases dealing with the question of whether certain property should be exempt from taxation. In *State v. Bareis*, 257 Wis. 497, 44 N.W.2d 259 (1950), the Wisconsin University Building Corporation, a nonstock, nonprofit corporation, was formed to acquire and manage property for the sole use and benefit of the University of Wisconsin. 257 Wis. at 498–99, 44 N.W.2d at 259–60. All net revenues derived from the property were paid to the regents. *Id.* at 499, 44 N.W.2d at 260. The members and officers of the corporation were required to be persons who held offices in the administrative structure of the university. *Id.* at 499, 44 N.W.2d at 261. The City of Madison sought to tax this property. *Id.*

The *Bareis* court noted that the city did not argue the fact that such lands would be exempt from property tax when title to the lands finally rests with the University of Wisconsin. *Id.* at 503, 44 N.W.2d at 262. The main question was the taxable status of the property while in the name of the realtor and before it is actually devoted to unquestionable university work. *Id.* The court then looked past the form of the legal title to the substance of the status of the owner of the beneficial interest in the property and held that "[t]here is no real question but that title to the real estate is in the name of the Corporation. It is just as clear that it is held for the benefit of the University (the state) and that the beneficial owner is the State of Wisconsin." *Id.* at 504–

05, 44 N.W.2d at 263. The court ultimately held that since everything the corporation holds was held for the benefit of the state, the property was exempt from taxation. *Id.*

In *Mitchell Aero, Inc. v. City of Milwaukee*, 42 Wisc.2d 656, 658, 168 N.W.2d 183, 184 (1969), the plaintiff operated a noncommercial aviation business at the Milwaukee airport. The plaintiff constructed several hangars on land leased from the county. *Id.* Under the terms of the lease and bill of sale the hangars were "owned" by the county. *Id.* In *Mitchell Aero*, the Wisconsin Supreme Court, though citing the principles enunciated in *Bareis* and noting that the county held legal title to the hangars, held that there was not sufficient indicia of ownership with the paper title in the county to warrant an exemption from property tax. *Id.* at 662, 168 N.W.2d at 187. The court noted that several important rights associated with ownership rested in Aero and others rested with the county. *Id.* at 665, 168 N.W.2d at 187.

Finally, in *Gebhardt v. City of West Allis*, 89 Wis.2d 103, 278 N.W.2d 465 (1979), the plaintiff leased land from the State of Wisconsin and constructed at his own expense and according to design specifications furnished by the state an indoor ice skating rink. Title to the skating rink was held by the plaintiff only until the indebtedness thereon was retired, and upon the expiration of the lease the state would become full owner. 89 Wis.2d at 110, 278 N.W.2d at 469. The Wisconsin Supreme Court, in holding that the skating rink was exempt from taxation, opined that "public property favors this type of tax-exempt treatment for conveyance-leaseback arrangements between private enterprise and governmental bodies." *Id.* at 115, 278 N.W.2d at 471. The *Gebhardt* court at length distinguished the *Mitchell Aero* case from the facts presented in *Gebhardt*. The court noted that the primary difference between the lease in *Mitchell Aero* and the lease in *Gebhardt* was that in *Mitchell Aero* the tenant retained important aspects of ownership that were unusual in a conventional conveyance-leaseback agreement,

whereas in *Gebhardt* the state retained virtually complete control of the management and operation of the rink. *Id.* at 110–11, 278 N.W.2d at 468–69.

The Virginia Supreme Court also addressed a factual situation similar to the present case in *Harrison v. Day,* 202 Va. 967, 121 S.E.2d 615 (1961). In *Harrison,* the Virginia Ports Authority entered into a contract with a railroad for purchase of port property of the railroad, for the construction thereon by the Authority of new port facilities. 202 Va. at 969, 121 S.E.2d at 616. Improvements were to be paid for by the issuance of and sale by the Authority of revenue bonds. *Id.* at 970, 121 S.E.2d at 617. The Authority then leased back the property to the railroad for the operation by it of the new cargo terminal facilities for a period of thirty years, the rent due from such lease to equal the sum sufficient to extinguish debt resulting from the issuance of the revenue bonds. *Id.* If a profit was realized from the operation, the Authority was to receive a portion thereof. *Id.*

The Virginia Supreme Court held that the exemption of the property was not lost due to the leaseback agreement. 202 Va. at 972, 121 S.E.2d at 619. The court held that the property would still be owned by the state for the benefit of the public. *Id.* The court stated that the leaseback agreement was only a means chosen to accomplish a legitimate state purpose and also noted that if the facilities had been operated by the Authority, the property would plainly have been exempt from taxation. *Id.*

 Although the above-cited cases do not directly address the present factual situation, there appears to be a common element throughout these cases, namely that where the governmental entity enters into a lease agreement with a private entity to build facilities on government-owned land, the intent of the lease is to further promote a public use of that land without incurring indebtedness on the governmental entity, and the governmental entity is the ultimate beneficial owner of the improvements, the buildings and property will not lose their tax exempt status merely because legal title rests with another. Applying the above analysis to the present case, we believe that the City of Cedar Rapids was the beneficial owner of the construction of Tibben's facility and that it is therefore exempt from property tax pursuant to section 427.1(2).

The record reveals that the master plan of the Cedar Rapids Airport Commission was to expand the Cedar Rapids airport. The Commission realized that as a result of this expansion a second fixed-based operator would be needed. The Commission and the City Council, however, realized that in order to keep the City's bonding strength viable for the construction of a new terminal, it would be necessary to seek alternative methods to construct a new facility for Tibben without incurring indebtedness thereon. The airport director therefore put Tibben in contact with a local building contractor, who organized a nonprofit corporation, the Airport Building Corporation. The Cedar Rapids City Council unanimously adopted a resolution to issue industrial revenue bonds to finance the construction of the new facility, stating that such a facility would be "in the best interests, health and general welfare of the citizens of Cedar Rapids."

The City then leased the ground on which the facility was to be built for $1.00 per year to ABC. Paragraph 3 of the lease agreement between the Airport Commission and ABC reveals that ABC had to covenant that the City of Cedar Rapids had the right to terminate the lease at will if the City chose to prepay the balance owed on the construction loan. Paragraph 4 states that ABC was charged with the duty of contracting and building a facility that could be adapted for use as a fixed-base operation in accordance with the design plans and specifications provided by the City and on a time table fixed by the City.

Paragraph 5 of the site lease provides that no tenant, other than a fixed-base operator, shall use the leased premises and that such facilities must only be used as a fixed-base operator station. In paragraph 6, the lease provides that no tenant will be

allowed to lease the premises from ABC without the consent of the Airport Commission. Paragraph 7 provides that while ABC was to keep complete records of all transactions, the Airport Commission retains the right to inspect the accounts at all reasonable times.

In addition, paragraph 12 provides that all improvements made upon the leased premises were to become the property of the City at the expiration of the lease. Finally, paragraph 19 provides that ABC was obligated to maintain sufficient hazard insurance on the building to provide 100% of its replacement cost and to name the City as an additional named insured, a factor the Wisconsin Supreme Court found important in *Gebhardt*, given the fact that the City has complete possessory interest upon expiration of the lease. *Gebhardt*, 89 Wis.2d at 112–13, 278 N.W.2d at 470.

From the above facts, we conclude that the City of Cedar Rapids was the beneficial owner of the building in question. ABC had no assets; its basic function was to send the rent checks it received from Tibben to the bank. Any profits made from Tibben's operation were to be paid directly to the Airport Commission. Though ABC had legal title to the Tibben facilities, the benefits from the construction of the facilities ultimately flowed to the City of Cedar Rapids. The City held a quitclaim deed to the facilities in escrow. The intent and purpose of the lease was to benefit the City and was not intended to in any way benefit ABC. Though ABC was technically an independent nonprofit corporation with its own board of directors, the Linn County assessor admitted on cross-examination that the City exerts ultimate control over the Tibben facilities. Therefore, the City of Cedar Rapids is the beneficial owner of the building, and the building is thus exempt from the assessment of property tax pursuant to Iowa Code section 427.1(2).

AFFIRMED.