LESLIE A. GRINDEY, Administrator, Appellant, v. HARRY I. SMITH, Administrator, Appellee.

No. 46742.

228

February 5, 1946.

George R. Ludeman, of Mason City, for appellant.

N. Levinson, of Mason City, for appellee.

Wennerstrum, J.— ▪ The administrator of the estate of Nella P. Grindey, deceased, brought an action in equity against the administrator of the estate of John J. Walrath, deceased, wherein he sought an accounting and judgment by reason of the claimed collection of rentals by John J. Walrath during his lifetime from eighty acres of land belonging to Manley T. Dobler and his niece, Nella P. Grindey, for the period commencing March 1, 1932, and ending March 1, 1944. The trial court, after the allowance for credits for taxes paid by Walrath on the land, allowed the claim of the plaintiff for a portion of the rentals collected by Walrath for the years of 1939, 1940, 1941, 1942, and $143 collected in 1943, but denied any recovery for any rental collected during any prior years, holding that a recovery for the prior period was barred by reason of the statute of limitations.

Nella P. Grindey and her uncle, Manley T. Dobler, for the greater portion of the period for which the rental collections are in controversy each claimed an interest in eighty acres of land in Cerro Gordo County, Iowa. Dobler claimed to be the sole owner and Nella P. Grindey claimed an undivided one-half interest therein. Manley T. Dobler and Adah Bawden are brother and sister, both residing in the state of Illinois. In 1939 Adah Bawden deeded her then claimed share of the land to her daughter, Nella P. Grindey. It is shown

by the record that John J. Walrath was the husband of Adah Walrath, who was an aunt of Adah Bawden. Walrath in 1932 was requested by Manley T. Dobler to rent the land, the rentals of which are now in controversy, and it is disclosed that Walrath thereafter informed Mrs. Grindey of this request. He thereafter looked after the land and collected the rentals therefrom from March 1, 1932, to March 1, 1944.

John J. Walrath died April 15, 1944, and Nella P. Grindey died April 27, 1944.

It is disclosed by the record that in 1933 Mr. Walrath made a statement to Nella P. Grindey that Manley T. Dobler claimed all of the rentals and that on the advice of his attorney he, Walrath, was holding the rent and would not give it to either of them until a settlement was made and it was decided to whom the rents received from the farm property should be paid. There is testimony to the effect that in 1943 John J. Walrath called Mrs. Bawden by telephone and offered to send a check for $650 in settlement of the rentals held by him. The record also discloses that there was found by his administrator, among Mr. Walrath's papers after his death, a check for $650 payable "to the Order of Deft Manley Dobler and Netta P. Grindey," which check was signed by J. J. Walrath. It was dated February 3, 1943. This check had never been delivered. It is also shown that Manley T. Dobler brought an action in partition against the heirs of Nella P. Grindey and that on December 18, 1944, a decree was entered holding that Manley T. Dobler was entitled to an undivided one-half interest in the land, the rentals of which are in controversy, and that the remaining one-half interest belonged to Nella Grindey and Leslie A. Grindey, heirs of Nella P. Grindey, deceased.

It is the contention of the appellant that the trial court erred (1) in holding that the rentals collected by Walrath from 1932 through 1938 were barred by the statute of limitations in that (a) said Walrath was holding the rentals in trust for the owners and consequently the running of the statute of limitations did not commence until the trust relation was repudiated (b) Walrath acknowledged the indebtedness

for the rentals by the check previously referred to and that the same constituted a sufficient written acknowledgment to amount to a waiver of the statute of limitations under section 11018 of the Code of Iowa, and (c) that the transaction between the parties constituted a running account under the provisions of section 11011 of the 1939 Code of Iowa, and that under such circumstances the statute of limitations was not operative.

It is the contention of the appellant in this court that John J. Walrath was holding the rentals in trust for the owners of the real estate. When a landlord's agent receives rent money from a tenant he receives the landlord's money and holds it in trust for the landlord unless the relation of debtor and creditor is created by some agreement, expressed or implied. Boss v. Hardee, 70 App. D. C. 50, 103 F. 2d 751, 754. No such agreement is shown here and the record shows that Walrath expressly stated that he was holding the rent money for the rightful owner or owners. He was, therefore, trustee of it for the benefit of whoever might be established to be the owner of the real estate.

The statement found in 34 Am. Jur., Limitation of Actions, section 386, is applicable to the fact situation found in the instant case. It is there stated:

"Where the relationship between principal and agent is that of trustee and cestui que trust, there must, as in other cases of trust, be a termination of the relationship by a demand and accounting or by a repudiation or other step having this effect. Thus, the statute of limitations will not begin to run in favor of a bailee until he denies the bailment, and converts the property to his own use. *Similarly, where a person holds possession or receives rents in a fiduciary capacity, time does not run in his favor against the beneficiary;* and where the person who has acted as agent for an intestate continues to receive rents, professing to do so in behalf of the persons who shall be ascertained to be heirs at law, the true heir may, notwithstanding the lapse of the statutory limitation period, adopt the agency and make good his claim to the land and accumulations of rent." (Italics supplied.)

In 37 C. J., Limitations of Actions, section 177, it is stated:

"In respect to the running of the statute there is a marked distinction between a general or continuing agency and a special one. If there is a general or continuing agency the statute will not commence to run until the agency is in some way terminated; but if the agency is special, and relates to isolated transactions, in regard to which the agent received special authority from his principal, the statute will commence to run from each transaction, the right of action as to which will be barred or not according to the time which has elapsed from its respective date to the commencement of the suit. Unless the death of one of the parties occurs, the termination of a general or continuing agency cannot be effected so as to set the statute in motion, until an accounting is had or a demand for an accounting made and refused, or until there is an express repudiation of the agency communicated to the principal; and the demand must be one intended to put an end to the agency and to withdraw the authority conferred."

As heretofore disclosed by the statement of facts, it is shown in the instant case that there was a question as to whom the rental should be paid. Walrath continued to collect this money for the owners of the property but because of the dispute as to the respective interests of the claimed owners he did not deem it advisable to make a payment to either of the parties. His estate should not now be permitted to benefit by a plea of the statute of limitations where he was holding the rentals collected and refused to make any payments to anyone.

Bearing somewhat upon this case is the statement found in Leach v. Farmers Tr. & Sav. Bk., 204 Iowa 1343, 1346, 1347, 217 N. W. 445, 447:

"As soon as the bank, the agent, received the money or its equivalent in each case, there was an augmentation of the funds of the bank, and since the money passed into the hands of the receiver, there has been an augmentation of the funds in his hands. There was no specific direction in any of the

three cases as to how payment was to be made by the bank, *and therefore the relationship of principal and agent was never changed into that of creditor and debtor."* (Italics supplied.)

Under the facts as disclosed by the record in the instant case, and the authorities heretofore cited, it is our conclusion that the statute of limitations did not start to run in the instant case during the lifetime of John J. Walrath. By reason of this conclusion we necessarily must hold that the trial court was in error in its ruling that the recovery of the rentals which were collected by John J. Walrath during his lifetime prior to 1939 was barred by the statute of limitations.

Our determination of this phase of the case makes it unnecessary for us to comment on the other claimed errors as presented by the appellant. The cause is reversed.—Reversed.

GARFIELD, OLIVER, MANTZ, SMITH, HALE, MILLER, and MULRONEY, JJ., concur.

BLISS, C. J., takes no part.