255 N.W.2d 162 (1977)
In the Matter of NFO MEMBERS' CUSTODIAL ACCOUNT, an Express Trust, Robert Shoup, Willis Rowell and Robert Kessler, as Trustees, Appellants, and concerning BENEFICIARIES OF the AFORESAID TRUST, Appellees.
No. 2-58389.
Supreme Court of Iowa.
June 29, 1977.
Scalise, Scism, Gentry, Brick & Brick, Des Moines, and O'Connor & Hannan, Minneapolis, Minn., for appellants.
Edward J. Gallagher, Jr., and Michael M. Pedersen, Waterloo, for appellees.
*163 En banc.
LeGRAND, Justice.
This is an appeal to test an order sustaining defendants' special appearance on the ground the court lacked subject matter jurisdiction under § 633.10(4), The Code, to administer a purported trust agreement. We reverse and remand for further proceedings.
The facts may be summarized as follows. The National Farmers Organization, Inc., hereafter called NFO, is a corporation formed to facilitate joint collective bargaining in the sale of farm products raised by its members.
On June 30, 1970, NFO authorized establishment of a trust to be known as the NFO Grain Custodial Account. On June 15, 1973, the trust was reduced to a formal written declaration of trust. At the time of hearing on the special appearance, Robert Sharp, Willis Rowell, and Robert Kessler were the designated trustees.
Under the 1973 declaration and several amendments thereto, the trustees were authorized to collect, account for and manage all funds received from the sale of grain. They were expressly empowered to establish and maintain trust and custodial accounts, to establish and maintain a separate reserve fund, to borrow money to carry out the purposes of the trust, and to bring suit on behalf of the beneficiaries for money due from the grain products sold. They also had specified powers of investment.
The trustees were authorized to make certain deductions from the grain sale proceeds for marketing and blending expenses, membership dues and to establish a reserve fund. Net proceeds of each sale were to be remitted to the member whose grain was sold. The declaration provided that all terms and conditions of the trust would be governed by Iowa law.
Each member designated NFO as his or her collective bargaining agent and agreed, among other things, that NFO could enter into contracts for sale of products and commodities marketed from the member's farm. NFO was authorized to enter into contracts with the processors of products owned and controlled by the members, covering the selling prices and other conditions and establish marketing procedures.
In addition to this general agreement, each NFO member entered into a written contract with NFO explicitly authorizing it to sell members' grain and to receive in return the full payment for the materials sold. It also contained numerous details concerning the extent of NFO's authority.
There appears to be no dispute that NFO, as agent, could enter into a trust agreement for its members. It is claimed, however, that it did not do so under the record before us for reasons hereafter set out. See Restatement (Second) of Trusts §§ 17 and 19 (1959).
The trust operated for some time, selling members' grain, receiving proceeds, making deductions as authorized, and remitting net proceeds as directed by the trust declaration. Because of unprecedented market conditions, the trust was unable to continue. On August 6, 1974, the trustees resolved to terminate the trust and to liquidate the assets then on hand. These assets were insufficient to make full payment to all beneficiaries.
The trustees filed a petition seeking the intervention of the district court in the dissolution and liquidation of the trust under § 633.10(4), The Code, 1975. That section provides:
"The district court sitting in probate shall have jurisdiction of:
"1. * * *
"2. * * *
"3. * * *
"4. Trusts and Trustees. The appointment of trustees; the granting of letters of trusteeship; the administration of testamentary trusts; the administration of express trusts where jurisdiction is specifically conferred on the court by the trust instrument; the administration of express trusts where the administration of the court is invoked by the trustee, beneficiary or any interested party; the administration of trusts which are established *164 by a decree of court and result in the administration thereof by the court; and the settlement and closing of all such trusts." (Emphasis added.)
A number of beneficiaries under the trust objected to this procedure, challenging the subject matter jurisdiction of the court on the ground there was no express trust to be administered, without which the court could not act. § 633.10(4), supra. The trial court sustained the special appearances on this ground. This appeal followed.
An appeal from a ruling on a special appearance is not heard de novo. It is reviewed on errors only and the findings of the trial court, if supported by substantial evidence, are binding upon us. Douglas Machine & Engineering Co., Inc. v. Hyflow Blanking Press Co., 229 N.W.2d 784, 787-788 (Iowa 1975). Of course, we are not bound by the trial court's legal conclusions or by its application of legal principles. Hamilton v. Town of Palo, 244 N.W.2d 329, 331 (Iowa 1976); City of Des Moines v. Huff, 232 N.W.2d 574, 576 (Iowa 1975).
A trust ordinarily exists when legal and equitable title are separated with the person holding legal title obligated to hold and administer the property for the benefit of the one holding equitable title.
Restatement (Second) of Trusts § 2 (1959) defines a trust as follows:
"A trust, as the term is used in the Restatement of this Subject, when not qualified by the word `charitable,' `resulting' or `constructive,' is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it."
G. Bogert, Trusts & Trustees (2d ed. 1965), § 1, includes this definition of a trust:
"A trust may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another."
We defined trust in Ponzelino v. Ponzelino, 238 Iowa 201, 203, 26 N.W.2d 330, 331 (1947) this way:
"[A trust is] a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with it for the benefit of another."
See also definition in Trustees of Iowa College v. Baillie, 236 Iowa 235, 239, 17 N.W.2d 143, 146 (1945).
We believe the facts before us meet all the requirements of an express trust.
As we understand the trial court's ruling, it found the trustees did not have legal title to any trust assets held for the beneficiaries. This is one of the requirements under the definition of express trust, as explained in comment "H" to Restatement (Second) of Trusts, § 2, supra:
"The elements of a trust. As appears in this section a trust involves three elements, namely, (1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary." (Emphasis added.)
We believe this was premised on an erroneous legal conclusion concerning the relationship of the parties. The trust declaration signed in 1973 included an exhibit describing the property which the trustees were to take over. It was as follows:
"EXHIBIT A TO DECLARATION OF TRUST NFO MEMBERS CUSTODIAL ACCOUNT, GRAIN ACCOUNT AND NFO MEMBERS CUSTODIAL ACCOUNT, GRAIN RESERVE. Both of the above entitled accounts, located at the Okey-Vernon National Bank of Corning, Iowa, and all other cash and assets held in the name of the NFO Members Custodial Account, subject only to such existing obligations as have been authorized by the Trustees and are consistent with the terms of this trust, and all the *165 records of such Trustees maintained at their regular offices at Corning, Iowa. This shall include, but is not limited to the following:
All the funds collected in those accounts and on deposit in the bank covering the sale of NFO members production of grain, oils, cotton and specialty crops and not yet paid out to the NFO members; embracing all the invoices sent to buyers for sales of such products for NFO members; embracing all warehouse receipts retained in the account covering members products; embracing all the records showing checks written to members in payment for their products, cashed and uncashed drafts drawn on buyers of members products; the books and records covering all such transactions, accounts receivable and all other assets and records of all description and all records covering obligations chargeable to the accounts; copies of the contracts entered into by NFO covering the sale of NFO members products."
The trustees thereafter held legal title to all this property. The trial court apparently relied on the testimony of Willis Rowell, one of the trustees, who stated the trustees did not think they held legal title to any property of the NFO members. Based on the record here, we find this was simply an expression of Mr. Rowell's erroneous legal opinion.
This is particularly true of that portion of the assets consisting of money. The mere possession of money vests title in the holder. 54 Am.Jur.2d Money § 6 at 554 (1971).
This significant statement appears in Bogert, supra, § 22 at 187:
"Frequently the object of an agency is the collection of choses in action owned by the principal and the remittance of the sums collected to the principal. Certain contingencies may require a decision whether the agent who had made collections but not remitted was a trustee of the sums held or was a debtor of the principal. * * *
"In order to determine the relationship the courts must examine the express or implied agreement of the parties and their conduct under it. Good business practice would require the agent to set up a special bank account for the collections and the parties often stipulate for such procedure. Sometimes statutes provide that certain types of agents for collection shall hold the proceeds separately. If there is a segregation, the money or a bank account produced by it is usually deemed to be held in trust." (Emphasis supplied.)
In Grindey v. Smith, 237 Iowa 227, 230, 21 N.W.2d 465, 466-467 (1946), we applied a similar rule in the collection of rents by the owner's agent, even though there was no express declaration of trust. There we said:
"When a landlord's agent receives rent money from a tenant, he receives the landlord's money and holds it in trust for the landlord unless the relation of debtor and creditor is created by some agreement, expressed or implied."
In addition to what we have already said, we point to several additional circumstances to support our view. The extensive powers granted to the trustees, the terms of the various written instruments, and the conduct of the parties are all inconsistent with the position now taken that no trust existed.
We hold the trial court erred in sustaining the special appearances. They should have been overruled, and the court should have assumed jurisdiction over the trustees' petition. The case is reversed and remanded for that purpose.
REVERSED AND REMANDED.