**IN THE COURT OF APPEALS OF IOWA**

No. 24-1139
Filed October 29, 2025

**IN THE MATTER OF THE ESTATE OF JAMES EDWIN IBELING,**

**NANCY IBELING,**
          Intervenor-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Katie Ranes, Judge.


A decedent's spouse appeals a declaratory judgment ruling denying her spousal share claim to assets in a private interest foundation established by the decedent before his death. **AFFIRMED.**


Gary Dickey (argued) of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, and Dallas J. Janssen of Janssen Law, PLC, Des Moines, for appellant.

Matthew G. Sease (argued) of Sease & Wadding, Des Moines, for appellee D.H.

Lynne Wallin Hines, Des Moines, attorney and guardian ad litem for C.A., E.A., E.A., H.A., and J.A.


Heard at oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**GREER, Presiding Judge.**

"Things are not always what they seem, the first appearance deceives many."[1]  Such may be the case where the probate court found that the operation of a Panamanian private interest foundation (PIF) is not the same as a revocable trust so that under Iowa law a spouse may not elect to take the PIF's holdings.

James Ibeling, the decedent, married Nancy Ibeling on August 26, 2019. About five years before that marriage, he established the Harris 6 Foundation, a private interest foundation (PIF) created under Republic of Panama law.  Days before the marriage, he funded the Harris 6 PIF by transferring ownership of Arizona real estate held in his name.  James died on February 17, 2021, and his will was admitted in probate court.  Nancy, as the surviving spouse, filed a request for her elective share of the estate under Iowa Code section 633.238(1) (2021), and the probate court denied the request in a declaratory judgment action brought by a beneficiary.  Believing the Harris 6 PIF should be treated similarly to a revocable trust under Iowa law which would allow her to access her elective share, Nancy appeals that ruling.

In this case of first impression, we apply the strict directive from *In re Estate of Myers*, 825 N.W.2d 1, 3 (Iowa 2012) and hold that the Harris 6 Foundation PIF is not a revocable trust, and thus, is not in the list assets under section 633.238(1) that can be accessed to fund Nancy's elective share in probate.

---

[1] Gaius Julius Phaedrus or Phaeder (c. 15 BC–c. 50 AD) was a 1st-century AD Roman fabulist and the first versifier of a collection of Aesop's Fables into Latin.

## I.      Factual Background and Proceedings.

In December 2013, James first connected with his Panama attorney, Carlos Varela Cardenal, when he hired him to form a development corporation involving a housing project.  Along with that work, Varela helped James establish the Harris 6 PIF.  James was the "100 percent" "universal beneficiary," but the foundation document designated four equal beneficiaries upon his death: his personal assistant Lisa Mengwasser, a nephew Todd Stiles, a minor friend D.H.,[2] and the James Edward Ibeling Foundation, which had not been set up at the time of the declaratory judgment hearing.

As required in Panama, James registered the Harris 6 PIF with the Public Registry on January 22, 2014.  Varela recalled that James's reason for transferring these assets to the foundation was "because he was considering to get married without a prenup, and he wanted to protect assets."  In the general articles of the foundation document, it noted: "The purpose of the foundation is to cover the costs of education, training, equipment, aid, as well as general maintenance or other similar purposes of one or more members of one or more families specified in the regulations."  Included in the assets of the Harris 6 PIF were several rental properties in Arizona, which were transferred to the foundation by warranty deeds recorded August 23, 2019.[3]  The Arizona properties were incumbered by mortgages listing only James Ibeling, personally, as the obligor.  After this transfer, which Nancy knew nothing about, she and James married on August 26, 2019.

---

[2] At the time of the probate hearing, D.H. was fourteen years old.
[3] Deeds were signed August 20, 2019.

After James died, an estate was opened to probate James's will.[4]   During those proceedings, the guardian ad litem (GAL) for the minor beneficiary applied for declaratory judgment asking the probate court to exclude the assets held by the Harris 6 Foundation PIF from Nancy's elective spousal share.  A hearing was held to present evidence related to the spousal share and PIF issue.  Mengwasser, testifying as a co-executor,[5] conservatively estimated that the bank account of the Harris 6 PIF, after the sale of the Arizona real estate, would exceed $1.1 million dollars.   The GAL called Juan Pablo Fabrega Polleri, an expert witness in Panamanian law, and Varela, to testify.  Both explained the legal attributes of a PIF.   After hearing from these witnesses, and from Nancy, the probate court determined that the Harris 6 Foundation PIF was not subject to Nancy's spousal share election because it was not a revocable trust and it did not fall within the other assets enumerated in section 633.238.  Nancy appeals from this ruling.

## II.      Standard of Review.

"A surviving spouse's claim against the estate for an elective share under Iowa Code section 633.236 is tried in equity."  *Myers*, 825 N.W.2d at 3.  We review cases tried in equity under a de novo review.   *Id.*; Iowa R. App. P. 6.907.   But when, as here, "there are no disputed facts and the appeal turns on whether the probate court's interpretation of a statute was erroneous, as is the case here, our review is for correction of errors at law."  *Myers*, 825 N.W.2d at 3–4.

---

[4] The attorney for the estate indicated to the probate court that James drafted the last version of his will on his own, copying some provisions from earlier wills.
[5] Mengwasser was also appointed by the Republic of Panama to serve as power of attorney over the Harris 6 PIF for purposes of liquidating the Arizona properties.

**III.** **Discussion.**

The probate court framed the issue it had to decide as "whether the Harris 6 Foundation should be included as property against which [Nancy] can elect to take a spousal share pursuant to Iowa Code § 633.238(1)." Everyone agrees that the Harris 6 Foundation is a PIF governed by the laws of the Republic of Panama. *See* Panama Law No. 25 of June 12, 1995. Because our statute makes no specific reference to Panamanian PIFs, the question is whether such an entity constitutes a trust subject to spousal election under section 633.238(1)(d).[6] The probate court determined a PIF does not qualify. Nancy challenges this conclusion on appeal.

**A. Spousal Election and Revocable Trusts.**

Section 633.238(1) states in relevant part:

1. The elective share of the surviving spouse shall be *limited to* all of the following:

a. One-third in value of all the legal or equitable estates in real property possessed by the decedent at any time during the marriage which have not been sold on execution or other judicial sale, and to which the surviving spouse has made no express written relinquishment of right, including but not limited to any relinquishments of rights described in paragraph "d".

b. All personal property that, at the time of death, was in the hands of the decedent as the head of a family, exempt from execution.

c. One-third of all personal property of the decedent that is not necessary for the payment of debts and charges.

d. (1) *One-third in value of the property held in trust not necessary for the payment of debts and charges over which the decedent was a settlor and retained at the time of death the power to alter, amend, or revoke the trust*, or over which the decedent waived or rescinded any such power within one year of the date

---

[6] Nancy does not challenge the district court's conclusion that a PIF falls outside the other categories of assets subject to election under section 633.238.

of death, and to which the surviving spouse has not made any express written relinquishment in compliance with subparagraph (2).

Iowa Code § 633.238(1) (emphasis added).

We offer some history about this code section, which did not always feature the language emphasized above. Prior to our supreme court's decision in *Sieh v. Sieh*, 713 N.W.2d 194 (Iowa 2006), the statute made no express provision for election against revocable trusts. In *Sieh*, the probate court found that assets in a revocable trust created prior to marriage were not subject to election by a surviving spouse. *See* 713 N.W.2d at 196. Recognizing a split in authority in other jurisdictions on whether a spouse could reach the assets of a revocable trust, our supreme court reversed. *Id.* at 195–96. It reasoned that because the decedent retained "full control of the assets of the inter vivos trust at the time of his death, including the power to revoke the trust, the trust assets were property possessed by the decedent during the marriage and thus subject to the spouse's statutory share under section 633.238." *Id.* at 195.

While the *Sieh* case was still advancing in the courts, the legislature added paragraph (d) to section 633.238.[7] *See* 2005 Iowa Acts ch. 38, § 14; *In re Estate of Frye*, No. 12-0028, 2012 WL 5599378, at *2 (Iowa Ct. App. Nov. 15, 2012) (noting this amendment reflected a "compromise between competing needs—to enable spouses to utilize the benefits of revocable trusts in estate planning, yet to continue protection for surviving spouses"). Four years after that, the legislature

---

[7] "The general assembly added revocable trusts to section 633.238 in 2005 after the *Sieh* case had been decided by the district court, but before we decided the appeal." *Myers*, 825 N.W.2d at 4.

amended the statute again—this time adding the words "limited to" to section 633.238's first sentence. *See* 2009 Iowa Acts ch. 52, § 4.

Then came the *Myers* decision, which partially overruled *Sieh*. *See Myers*, 825 N.W.2d at 6. There, the court held that a payable-on-death account, a nonprobate asset, was not specifically listed in section 633.238(1) and thus could not be included in the spousal elective share. *Id.* at 8 ("[O]nly the assets specifically enumerated in section 633.238 may be included in the surviving spouse's elective share"). Departing from *Sieh's* broad interpretation of the statute, the supreme court explained:

> We reached [our] conclusion [in *Sieh*] even though revocable trusts were not mentioned in section 633.238 at that time. . . . We reached this conclusion by relying on the Restatement (Third) of Property:
>
>> "Although property owned or owned in substance by the decedent immediately before death that passed outside of probate at the decedent's death is not part of the decedent's probate estate, such property is owned in substance by the decedent through various powers or rights, *such as the power to revoke, withdraw, invade, or sever,* or to appoint the decedent or the decedent's estate as beneficiary. Consequently, for purposes of calculating the amount of the [spouse's] elective share the value of property owned or owned in substance by the decedent immediately before death that passed outside of probate at the decedent's death to donees other than the surviving spouse is counted as part of the decedent's 'estate.' The decedent's motive in creating, exercising or not exercising any of these powers is irrelevant."
>
>> Based on this Restatement provision, we concluded the fact [that the decedent in *Sieh*] "had complete control over the trust assets at all times prior to his death . . . would allow the assets in the revocable trust to be included in the statutory share of [the] spouse electing against the will."

*Id.* at 4–5 (internal citations omitted). However, the *Myers* court concluded this approach to the statute was no longer viable after the legislature's 2009 amendment. Applying the words "limited to," our supreme court said:

> It is clear that the legislature, by this language, intended to limit the property that would be included in the surviving spouse's elective share to the four categories of property specifically identified in the statute. This interpretation is consistent with the general assembly's explanation accompanying the House version of the bill.[8]

*Id.* at 6.

With this Iowa legal background in mind, we next examine the legal requirements of a PIF to see if that entity operates with the "hallmarks of a revocable trust" as Nancy argues or if it is a "different animal" entirely as the GAL argues.

### 1. A PIF versus a Revocable Trust.

Clearly, a PIF is not specifically listed as a probate asset in section 633.238(1). But Nancy contends that does not matter, as a Panamanian PIF is just a trust by another name. She points to the statutory definition of a "trust," which includes "an express trust, charitable or noncharitable, with additions thereto, *wherever and however created,* including a trust created or determined by a judgment or decree under which the trust is to be administered in the manner of an express trust." Iowa Code § 633A.1102(21) (emphasis added).[9] Here, Nancy

---

[8] The draft legislation referenced in *Myers* described the 2009 amendment as follows: "The bill limits the elective share of the surviving spouse who elects to take against a decedent's will to the elective share portions contained in Code section 633.238 and does not include nonprobate or nontrust assets." H.F. 677, 83rd G.A., 1st Sess., explanation (Iowa 2009).

[9] Nancy also draws our attention to the common law notion that a trust exists wherever "legal and equitable title are separated with the person holding legal title obligated to hold and administer the property for the benefit of the one holding

asserts James's transfer of property to be managed by the Harris 6 PIF was just an inter vivos transfer of real estate through a trust instrument, and so the PIF is a trust for purposes of Iowa law. *See* Iowa Code § 633A.2101(1) ("A trust may be created by . . . [t]ransfer of property to another person as trustee during the settlor's lifetime").

Nancy also focuses on the operation of the PIF, comparing it to that of a revocable trust in Iowa. She notes, that during James's life, he was the "main" beneficiary of the PIF, was named the "founder," and served as the "protector." Nancy contends that in this role, James retained authority to: (1) amend the provisions of the Foundation; (2) remove the Foundation's council; (3) add, eliminate, or change any or all of the beneficiaries; (4) increase, decrease, or modify the benefits of any or all of the beneficiaries; and (5) modify the bylaws and dissolve the foundation. Thus, according to Nancy, the Harris 6 PIF fits into the category of a trust for purposes of section 633.238.1(d) because James, like the decedent in *Sieh*, had complete control over the trust assets at all times prior to his death.

The GAL pushes back, arguing that *Myers* applies here and that the lack of any explicit reference to a PIF in the statute operates to exclude the assets from the spousal elective share. *See Myers*, 825 N.W.2d at 6 (holding the spousal share "is limited to those assets specifically enumerated in section 633.238(1) and cannot be judicially expanded"). On top of that statutory interpretation, the GAL also asserts that the features of a PIF are for the most part distinct from a revocable

---

equitable title." *In re NFO Members' Custodial Acct.*, 255 N.W.2d 162, 164 (Iowa 1977).

trust.   And the GAL reasons that the Republic of Panama allows individuals to utilize a trust instrument in addition to the PIF, so there would be no reason to have both if a PIF is similar to a trust.

Expert testimony was part of this record.  The court heavily relied upon the testimony of Polleri, a Panamanian attorney, who the court described as "quite possibly the leading expert on PIFs established in the Republic of Panama."[10] Polleri testified that a PIF is not a trust, but is a unique legal entity separate from the individual that creates it.  Polleri opined:

> By virtue of this provision [Article 9 of Law 25], as of the moment of its constitution with the registration of the foundation charter at the public registry, the private interest foundation has autonomy and its own legal existence different from that of its founder and that of the beneficiaries.

He further explained:

> As I was mentioning, the foundation then once registered it has its own legal capacity to exercise rights and to acquire obligations under the same circumstances that a natural or physical person would as well as a type of—any other type of legal entity.
> Even though the founder is the creator of the foundation, it is the foundation council as an administrative organ of the legal entity who manages and disposes of the assets of the foundation, as per the provisions set out by the founder in the foundation charter or its bylaws which regulate, you know, further regulate the foundation charter.
> As a founder of those does not have any powers over the assets of the foundation once transferred by the founder to the legal entity.  Given the autonomous personality of the private interest foundation, Article 11 of Law 25 sets forth in its third paragraph.
> And if I may read that provision, says that, "For any and all legal effects, the assets of a foundation shall constitute a patrimony separate from the personal assets of the founder.  Therefore, they

---

[10] Polleri testified that his expertise was in corporate, trust and private interest foundation law and wrote a book in 2010, later edited in 2021, under the title *Private Interest Foundations as Entities or Vehicles for Estate Planning and Inheritance Succession*.  The 2018 version, still current, was translated into English and was submitted as an exhibit at the hearing.

shall not be sequestered, embargo, nor subject of any actions or costs precautionary measure, except for obligations incurred or for damages costs as a result of the execution of the purposes or objective of the foundation or for legitimate right of the beneficiaries. In no event shall they be liable for personal obligations of the founder or of the beneficiaries."

This is the essence of Panama's foundation law. That once created, the foundation has its own legal capacity, its own legal identity, it owns its own assets either transferred by the founder or any other third party.

Once the assets are transferred by the founder to the foundation, those assets no longer belong to the founder. They belong to the foundation. And they are administered or disposed of by the administration council as per the rules, regulations, provisions set out in the articles in the foundation charter or in the bylaws . . . for the benefit of the beneficiaries.

Polleri explained that while he was not familiar with trust law in the United States, he was very familiar with Panamanian trust law, which he understood was similar to the United States trust law. The Panama trust allows "full ownership to the trustee in order for the trustee to manage and dispose of those assets for the benefit of the beneficiaries for the purpose of—as set out in the trust agreement."

As for similarities between a trust in Panama and a PIF, Polleri explained

the only similarity of a trust with respect to a [PIF], both are vehicles used primarily for family and estate planning.

With a trust and a [PIF], the settlor and the founder respectively can arrange, in any orderly manner and without having to go through an inheritance process, a transfer of his/her estate to his or her heirs.

As for the differences, Polleri clarified that:

A [PIF] is differentiated from a trust from the perspective of the Panamanian legislation, of course, in that the latter that is the Panamanian foundation—I'm sorry—a trust is not a legal entity. A trust does not have autonomy. A trust is just an agreement, a contract. It lacks, as I explained before with respect to [a] Panamanian [PIF], it lacks legal personality and capacity because of its contractual origin, since it is formalized, as I mentioned before, by a contract by which a person, in this case, again, the settlor, agrees to transfer the proprietorship of assets to a third party, the trustee,

according to the terms of the contract in the benefit of the beneficiaries amongst which the setter maybe do it.

A settlor, consequently, transfers or assigns the proprietorship and the control of the goods given in trust. The settlor cannot be— the settlor cannot be the trustee; thus does not have the power to administer the assets given in trust.

Whereas Law 25 allows the founder to be a member of the foundation council and also to have full general powers of attorney to manage the businesses and dispose of the assets of the foundation. The founder can be a beneficiary as well while being part of the foundation council without affecting the nature of the [PIF] or causing the lift of its veil or the known recognition of its separate autonomous identity from that of the founder. Article 4 of Law 25, which as I mentioned before, I believe, sets out the requirements and contents of the foundation charter allowing the founder to be a member of the foundation council and also to be a beneficiary; whereas, Panama's trust law does not allow so. The effect of being the settlor, the trustee, and the beneficiary is a termination of the trust.

Article 33 of Panama's law on trust Law Number 1 of 1984 sets out as one of the reasons for the termination of a trust when the trustee and the main beneficiaries are the same person. So, as you can see, there are fundamental differences.

The probate court took from this testimony several key differences and

stated:

The testimony of [Polleri] further established that PIFs are legal entities separate from the individual founder and that PIFs have the capacity to act as a person, much like a corporation. The capacity to act as a person, similar to a corporation, provides another meaningful difference from a revocable trust under Iowa law. A trust can only act through the actions of a trustee and not through the trust itself. For example, a revocable trust cannot bring claims in its own capacity like a corporation could bring claims against an individual. Instead, all of the actions are done by and through the trustee.

Similarly, Panamanian law makes it clear that the assets of the PIF are completely separate from the assets of the PIF Founder upon transfer of ownership. *Panama's Law No. 25 of June 12, 1995, Article 11*. This is distinguishable from a revocable trust, where "the trust property of a revocable trust is subject to the debts of the settlor to the extent of the settlor's power of revocation." Iowa Code § 633A.3104(1). Personal debts of the PIF Founder, in this case [James], may not be satisfied by the assets of the PIF. *Panama's Law No. 25 of June 12, 1995, Article 11*.

Another important distinction is that a PIF is required to obtain its own tax identification status in Panama. No such requirement is required in Iowa (or the United States) for a revocable trust. For these reasons and the reasons explained by [Polleri], there are significant and important differences between a revocable trust and a PIF, despite that both serve as asset protection instruments.

We agree with this analysis. All of these features identified by the court distinguish the form and function of a Panamanian PIF from that of a revocable trust under Iowa law. Despite Nancy's argument that James retained authority to control the PIF at the time of his death, it is not enough for purposes of section 633.238 that the decent effectively had the power to "alter, amend, or revoke" the disposition. The legislature has required that the assets also be "held in trust" if they are to fall within the scope of spousal election. Iowa Code § 633.238(1)(d). The assets in the Harris 6 PIF were not.

In sum, we find the GAL's arguments more persuasive. Given the differences between a revocable trust and the Harris 6 PIF, and after applying the language of section 633.238(1), we find that the assets contained in the PIF were nonprobate assets, and Nancy is not entitled to access them to fund her spousal elective share.

## 2. Nancy's Equitable Argument.

Nancy's final argument relates to inequities arising from the founding of the Harris 6 PIF. Testimony at the hearing established that the Harris 6 PIF was not set up perfectly—the Arizona real estate was transferred to the PIF but the mortgage debts remained in James's name personally. The probate court determined this fact did not work to invalidate the PIF.

Nancy contends that even if we do not find the PIF should be treated as a revocable trust, there are equitable reasons to allow her to access the assets for her spousal share. However, she cites no authority to support the relief she requests. Iowa Rule of Appellate Procedure 6.903(2)(8)(3) requires a brief to include "[a]n argument containing the appellant's contentions and the reasons for them with *citations to the authorities relied on* and references to the pertinent parts of the record in accordance with rule 6.904(4)." (Emphasis added). And *Hogan v. Washington Mutual Bank,* the Arizona case that Nancy cites, only relates to the relationship between James, as the mortgagor, and the mortgagee bank. *See* 277 P.3d 781, 782–84 (Ariz. 2012). That authority does not support the argument presented, and so we do not further consider Nancy's second issue based on her failure to cite authority in support of it.

## IV.    Conclusion.

Although on first look the Harris 6 PIF could be described similarly to a revocable trust, we find there are relevant differences between a Panamanian PIF and an Iowa revocable trust. We therefore cannot treat these two vehicles for estate planning the same. As we are not to "extend, enlarge or otherwise change the meaning of a statute," we do not expand the limitations of section 633.238(1) to include a Republic of Panama PIF. *See Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). Finally, on her second challenge, we find Nancy waived her argument as she had no authority for the premise she asserted.

**AFFIRMED.**